Joseph C. BILBREY et al., Plaintiffs,

v.

Garland BROWN et al., Defendants.

Civ. No. 78–460.

United States District Court,
D. Oregon.

Oct. 9, 1979.

David B. Hatton, St. Helens, Or., James T. Massey, Portland, Or., for plaintiffs.

Andrew K. Chenoweth, Portland, Or., for defendants.

## OPINION and ORDER

JAMES M. BURNS, District Judge:

This is a class action seeking declaratory and injunctive relief brought on behalf of elementary students in Columbia County School District No. 13. Defendants are officials and employees of District No. 13. In their Fifth Claim for Relief, plaintiffs have challenged the constitutionality of the District's search and seizure policies set forth in the District's Minimum Standards for Student Conduct and Discipline.[1] They contend that the policies violate plaintiffs' right to privacy protected by the Warrant Clause of the Fourth Amendment. They also contend that the policies are so vague and overly broad as to constitute a denial of plaintiffs' right to due process of law. Both parties have moved for summary judgment on the Fifth Claim for Relief.

*The Fourth Amendment Challenge:*

■ It is well settled that public school students do not shed their constitutional rights upon reaching the schoolhouse doors. *Tinker v. Des Moines School District*, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975). Among those rights are the Fourth Amendment's guarantee of freedom from unreasonable searches and seizures.

■ As a general rule, searches conducted without a warrant approved by a judge or magistrate are *per se* unreasonable. *Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967). This rule, however, is subject to many exceptions based on special circumstances. *See, e. g., Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967) (exigent circumstances excuse warrant requirement); *United States v. Ramsey*, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977) (border searches excepted from warrant requirement); *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (search incident to lawful arrest does not require warrant); *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925) (search

1. The Minimum Standards provide:
   III. Search and Seizure
   A. What are your rights?
   In a search and seizure situation the following procedures shall be followed.
   1. A student's person will only be searched when there is probable cause that the student is concealing evidence of an illegal act or school violation.
   2. Illegal items (weapons, firearms, etc.) or other possessions reasonably determined by the proper school *authorities* to be a threat to your safety security or others [sic] may be seized by school officials.
   3. Items which may be used to disrupt or interfere with the educational process may be temporarily removed from your possession by a staff member. These items may be returned to the student by that staff member or through the office.
   4. A general inspection of school properties such as lockers, desks, etc. may be conducted on a regular basis. During these inspections, items which are school property may be collected. (Example: Overdue library books)
   5. All items which have been seized will be turned over to proper authorities or returned to the true owner, depending on the situation.
   6. You will have the opportunity to be present when a search of personal possessions is to be conducted *unless* —
   a. You are absent from school
   b. School authorities decide that your presence could endanger your health and safety.

of automobile permitted without warrant); *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) (frisk for protection of investigatory officer fearing attack not subject to warrant requirement); *United States· v. Davis*, 482 F.2d 893 (9th Cir. 1973) (airport screening search to prevent skyjacking allowed despite lack of warrant).

■ The determination of whether a warrantless search is reasonable or not requires a balancing of the governmental interest in the search and the individual's interest in privacy. *Terry v. Ohio*, 392 U.S. at 20–21, 88 S.Ct. 1868.

■ The law recognizes that elementary school students have not yet achieved the maturity of adults. For this reason, school officials are charged not only with furthering the education of students but also with protecting the health and safety of students while they are at school. These responsibilities obligate school officials to control students' behavior and the items they are allowed to possess on the premises. Such objects may range from the relatively innocuous—a water pistol used to disrupt the class—to the deadly—a handgun which endangers the safety of others.

The students' interest in privacy must be balanced against the necessity of school officials to be able to maintain order and discipline in the school and to fulfill their duties under the *in loco parentis* doctrine to protect the health and safety of their students. To require school officials to obtain a warrant before ever searching a student would unduly hamper their effectiveness in performing their duties.[2]

■■ So long as a school is pursuing its legitimate interest in maintaining the order, discipline, safety, supervision and education of students, the Fourth Amendment does not require that a warrant be obtained before searching a student. Such searches are reasonable under the first clause of the Fourth Amendment. *M. v. Board of Education, Ball-Chatham Community Unit School District No. 5*, 429 F.Supp. 288 (S.D.Ill. 1977); *Bellnier v. Lund*, 438 F.Supp. 47 (N.D.N.Y.1977); *Doe v. Renfrow*, 475 F.Supp. 1012 (N.D.Ind.1979); *People v. D.*, 34 N.Y.2d 483, 358 N.Y.S.2d 403, 315 N.E.2d 466 (1974); *In re State in Interest of G.C.*, 121 N.J.Super. 108, 296 A.2d 102 (1972); *Commonwealth v. Dingfelt*, 227 Pa.Super. 380, 323 A.2d 145 (1974); *State v. Young*, 234 Ga. 488, 216 S.E.2d 586 (1975); *State v. F.W.E.*, 360 So.2d 148 (Fla.Dist.Ct.App. 1978); *State v. Baccino*, 282 A.2d 869 (Del. Super.Ct.1971); *People v. Ward*, 62 Mich. App. 46, 233 N.W.2d 180 (1975); *Doe v. State*, 88 N.M. 347, 540 P.2d 827 (1975); *State v. McKinnon*, 88 Wash.2d 75, 558 P.2d 781 (1977); *In re Thomas G.*, 11 Cal.App.3d 1193, 90 Cal.Rptr. 361 (1970). *Contra State v. Mora*, 307 So.2d 317 (La.1975). Nearly all the jurisdictions which have decided this question have permitted such searches to be conducted when a school official has reasonable cause to believe a student has violated school policy. *But see Picha v. Wielgos*, 410 F.Supp. 1214 (N.D.Ill.1976). The defendants' school policies impose the higher standard of a finding of probable cause before a student may be searched. The policies do not violate the Fourth Amendment.

*The Vagueness Challenge:*

Plaintiffs contend that the search and seizure policies of defendants' Minimum Standards for Student Conduct and Discipline fail to provide the degree of specificity required to constitute due process of law. They point out that § III(A)(1) of the standards fails to define "school violation."[3] They argue that because of this absence of

---

**2.** Nothing here is intended to suggest that in a specific case, Fourth Amendment violations may have occurred, for which judicial relief is warranted. The time and manner of search, the foundation for it which existed at the time, the items seized, the purpose sought to be served—these and other aspects may well produce a violation. Here, however, the damage claims of the individual plaintiffs, out of whose

searches this lawsuit arose, will be addressed later in connection with the other claims for relief. Here, I deal only with the Fifth Claim, which, as mentioned, seeks declaratory and injunctive relief as to the Minimum Standards as written.

**3.** *See* note 1 *supra*.

specificity, students are not given fair warning of the type of conduct which will justify a search and that arbitrary enforcement may result.

■ I find that the challenged phrase is not so vague as to violate due process when viewed in the context of the entire Minimum Standards. Section I(B) sets forth a list of major school violations which could result in discipline, suspension or expulsion.[4] Section VI sets out rules regarding prohibited substances.[5] Section II(A) explains students' rights and responsibilities with respect to their personal belongings and to items belonging to the school.[6] When viewed as a whole, the standards provide adequate notice of the type of conduct which may subject a student to a search.

■ Plaintiffs also object to §§ III(A)(2) and III(A)(3) on the ground that items that might be a threat to safety or that may be used to disrupt or interfere with the educational process are not defined. But the Constitution does not require that school rules include a specific catalog of prohibited items so long as their salient characteristics are readily determinable and easily understood. *See Banks v.*

*Board of Public Instruction,* 314 F.Supp. 285 (S.D.Fla.1970). I find that these sections provide a sufficiently certain standard for determining whether an object may be seized.

■ Finally, plaintiffs contend that the interrelationship between § III(A)(1) and §§ III(A)(2) and III(A)(3) is not clear. Although perhaps not drafted in the most felicitous manner, the provisions are not so ambiguous as to deny due process. Subsection (1) states that a student's person will *only* be searched upon probable cause. While the probable cause standard is not reiterated in subsections (2) and (3), the limiting word "only" in (1) indicates that where searches of a student are undertaken under the circumstances described in (2) and (3) the probable cause standard must be met.[7] The "illegal act" and "school violation" standards of subsection (1) may also be read into (2) and (3). Possession of illegal items referred to in (2) falls within the illegal act category of (1). Possession of items which threaten safety or security or which disrupt the educational process, referred to in (2) and (3), also constitute

---

4.　　　I. Standards of Conduct
　　　*　　*　　*　　*　　*　　*
B. Students shall be liable to discipline, suspension, or expulsion for misconduct, including but not limited to:
　1. Theft.
　2. Disruption of school.
　3. Damage or destruction of private property on school premises or during school activity.
　4. Damage or destruction of school property.
　5. Assaults or threat of harm.
　6. Unauthorized use of weapons or dangerous instruments.
　7. Unlawful use of drugs, narcotics, or alcoholic beverages.
　8. Persistent failure to comply with rules or the lawful directions of teachers or school officials.

5.　　　VI. Use of Tobacco (Drugs-Alcohol)
A. Tobacco and its derivatives are not to be used by persons under the age of 18 years, on or about school premises. Any student possessing tobacco, drugs, and/or alcohol will be subject to expulsion or legal action.
B. Use and possession of drugs not prescribed by doctor or that are not known by a parent

are prohibited on school grounds. All medication that is to be taken in school, will be taken in the office under school supervision.
C. Alcohol is prohibited on or about school grounds at all times.

6.　　II. Students Rights and Responsibilities
A. Each student has the right to a personal place to store his school possessions. Each student's responsibilities include:
　1. To open this place for inspection on a regular basis.
　2. See that items belonging to the school are returned to their proper places and not left among your personal possessions.
　3. You have the opportunity to be present during a search and to know of the search before it is conducted.

7. I need not discuss the question of whether the defendants could search under a regulation which had a lesser standard than probable cause. Nor do I express any views at this stage of this case as to whether the probable cause standards were met in the cases of the actual searches conducted at the school of the individual plaintiffs.

evidence of violations of the school conduct code. See §§ I(B)(2–7) and VI(B).

I conclude, for the reasons given, that summary judgment in favor of plaintiffs should be denied and summary judgment in favor of defendants should be granted on plaintiffs' Fifth Claim for Relief.

It is so ORDERED.