471 So.2d 1287 (1985)
Bruce Allen McENTIRE, Appellant,
v.
BREVARD COUNTY SCHOOL BOARD, Appellee.
No. 84-292.
District Court of Appeal of Florida, Fifth District.
February 7, 1985.
Rehearing Denied March 19, 1985.
Robert P. Jordan, Palm Bay, for appellant.
Bill Walker, Rockledge, for appellee.
COBB, Chief Judge.
This is an appeal of a final order of the Brevard County School Board expelling appellant, Bruce Allen McEntire, for the remainder of the 1983-84 school year and the 1984 summer session from the basic program at Astronaut High School. The order appealed from is the result of an informal hearing held pursuant to sections 120.57(2) and 230.23(6)(c), Florida Statutes (1983).
McEntire was expelled based upon a finding by the Board that he:
[C]ommitted a serious breach of conduct which substantially disrupted the orderly conduct of the school in that the student was guilty of possessing and selling pills represented to be speed on the campus of the Astronaut High School, Brevard County, Florida, on or about December 8, 1983.
The charges against McEntire were based upon School Board Rule 6Gx5-4.10. The portion of the rule involved in this appeal is section (3)(b), which reads as follows:
Possession, Sale and/or Use of Alcoholic Beverages, Narcotics, Illegal Drugs, and/or Prohibited Substances.
1. Possession, Sale and/or Use. Notice is hereby given that possession or sale of controlled substances, as defined in Florida Statutes, Chapter 893, by any student while such student is upon school property or in attendance at a school function is grounds for expulsion. Pupil possession of or being under the influence of alcoholic beverages, and/or hallucinogenic drugs or combinations of drugs or substances having hallucinatory effects, marijuana, or under the influence of glue or other drugs or combinations of drugs or drug paraphernalia expressly prohibited by federal, state, or local laws, including prohibited substances which shall include those substances possessed, sold, and/or used that are held out to be, or represented to be, controlled substances, illegal substances, or counterfeit in any respect illegal or controlled substances, at any school function or on school property is grounds for expulsion and referral to proper law enforcement agencies.
It was alleged that McEntire was guilty of "possession and sale of illegal drugs or counterfeit substance" on school property. The uncontroverted proof at the hearing revealed that McEntire sold caffeine pills to another student, Reggie Hall, who had heard from other students that the pills were "speed." The sales occurred on December *1288 8 and 9, 1983. Hall testified that McEntire never represented to him that the pills were speed, and specifically told him they were caffeine pills at the time of the second sale on December 9. There was no evidence that McEntire represented the pills as speed to anyone. Caffeine, of course, is not a controlled or illegal substance.
During the prehearing investigation, Hall, who was fourteen years old, had signed a typed statement that indicated that McEntire had represented the pills to be speed pills. This was corrected by Hall at the hearing during examination by a school board member, Lynn Demetriades:
MRS. DEMETRIADES: I have a question. In Reggie's statement  did you say in your statement that Allen McEntire asked me if I wanted to buy some speed and I said I guess so?
THE WITNESS: That was the first time during the school play.
MRS. DEMETRIADES: Did he speak directly of speed?
THE WITNESS: No, he didn't say speed.
MRS. DEMETRIADES: Did he use the word speed to you?
THE WITNESS: He said pills.
MRS. DEMETRIADES: Do you recall the statement you signed?
THE WITNESS: Yes.
MRS. DEMETRIADES: In your statement you said on Thursday morning, December 8, 1983, during the school play, Allen McEntire asked me if I wanted to buy some speed. I said I guess so.
THE WITNESS: Well, that should have been pills. Speed is the wrong word, I guess, I put in there.
DR. WILLIAMSON: Say that again, Reggie.
THE WITNESS: That speed should have been pills. He never said speed outright to me.
When asked by the Dean of the school, during the investigation, what the pills were, McEntire had referred to them as 357 magnums, but there was no further explanation as to what that meant.
This was the extent of the evidence. As observed in appellant's brief, there simply was no competent, substantial evidence to support the Board finding that McEntire violated Rule 6Gx5-4.10 by selling pills which he represented to be speed on the campus. There was no evidence that McEntire represented the pills to be anything other than what they were  caffeine.
Interestingly enough, the deliberations of the Board following the evidentiary hearing revealed its concern with the lack of any evidence to support its charge that McEntire had sold pills represented to be speed. The following exchange between two Board members is illustrative:
MRS. DEMETRIADES: But then  see, that's the critical issue. We are expelling Bruce for representing something to be speed and we have a witness who said he didn't represent it as being speed. Now, Reggie could potentially be in some problems for buying it under the belief that it was speed, but the fact that he says, Bruce did not present it as speed, puts me in that kind of a quandary. And I guess I go back to the feeling that the positions that we are taking in regards to drugs are very important positions, but that we have to be very cautious in the decisions we make.
On an emotional level, I feel very strongly on the subject. I think there is nothing more disruptive in the games that are being played by kids, by parents, by attorneys in this whole situation. I think it's devastating to the school system. And I think it grinds to a halt when these kinds of stupid things happen. But irregardless of that emotional level feeling, and it's intellectual to a degree, you know, it comes back down to the nitty gritty. The point is did he present this as speed and I don't have anybody saying that he did.
DR. WILLIAMSON: Our lawyer says he doesn't think it's necessary based on the evidence. I agree with him.
MRS. DEMETRIADES: Elaborate on that a little bit so maybe I can  I am very open minded on it.

*1289 DR. WILLIAMSON: There's no question that he sold pills. No question. No question that the buyer thought he was getting speed. That's enough for me.
MRS. DEMETRIADES: But wait a minute, it can't be enough for you.
DR. WILLIAMSON: Why?
MRS. DEMETRIADES: Because the subject is whether Bruce was purporting it to be speed. That is where the violation of Board policy occurs. If he has not, then in fact there is no case.
Mrs. Demetriades was eminently correct and perceptive, there was no case. The facts may have been enough for Dr. Williamson and a majority of the Board, but they are not enough for this court. We reverse and remand with directions to the appellee to expunge from the appellant's school record any and all references and documentation relative to his expulsion and to take any necessary steps to place him into the educational status he would have held had it not been for this expulsion.
REVERSED and REMANDED.
FRANK D. UPCHURCH, Jr., and COWART, JJ., concur.